UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LANDMARK HEALTH SOLUTIONS, LLC, | : | |
| | : | |
| Plaintiff and Counter-Defendant, | : | Civil Action No.: 11cv456 |
| | : | |
| v. | : | Document Nos.:  14, 21 |
| | : | |
| NOT FOR PROFIT HOSPITAL CORPORATION, *et al.*, | : | |
| | : | |
| Defendant & Counter-Claimant. | : | |

**MEMORANDUM OPINION**

GRANTING THE PLAINTIFF LEAVE TO FILE A SUPPLEMENTAL COMPLAINT WITHIN THIRTY
DAYS; ORDERING SUPPLEMENTAL BRIEFING; DENYING THE PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT

**I. INTRODUCTION**

The plaintiff, Landmark Health Solutions, LLC ("Landmark") offers consulting services to healthcare organizations. It entered into a contract to provide consulting services to the defendant, Not For Profit Hospital Corporation ("NFPHC"). Landmark has now filed this action, claiming that NFPHC has outstanding invoices for services rendered, in breach of the contract. NFPHC has filed a counterclaim, alleging that Landmark failed to satisfy some of its contractual obligations, resulting in monetary losses. NFPHC has filed a motion to dismiss, or in the alternative, for summary judgment, and Landmark has filed a cross-motion for summary judgment. Because Landmark obtained a certificate of registration to do business in the District after initiating this action, the Court lacks subject matter jurisdiction to hear its claims, but Landmark is granted leave to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d) within thirty days. In addition, because the parties have not provided sufficient information for the Court to determine whether Landmark's trade name has been registered, and

1

also whether it has obtained the requisite business license to do business in the District, the parties are required to provide supplemental briefing regarding these respective issues within thirty days. Finally, because the Court prefers to evaluate Landmark's challenge to NFPHC's expert witnesses at a *Daubert* hearing to be scheduled shortly after appropriate *Daubert* motions are filed, Landmark's cross-motion for summary judgment is denied.

## II. FACTUAL & PROCEDURAL BACKGROUND

In August of 2010, Landmark entered into two letter agreements to provide management consulting and staffing services in connection with the transition of ownership and clinical operations of NFPHC's Skilled Nursing Facility ("SNF"). Def.'s Stmt. of Mat. Facts [Dckt. # 14-1] ¶¶ 2-3; Pl.'s Additional Stmt. of Mat. Facts [Dckt. # 21-1] ¶ 1. Landmark agreed to perform services in compliance with all federal, state, and local requirements. Def.'s Stmt. of Mat. Facts [Dckt. # 14-1] ¶ 4. The parties executed a letter contract in October of 2010, where Landmark would provide further services. *Id.* ¶ 5; Pl.'s Additional Stmt. of Mat. Facts [Dckt. # 21-1] ¶ 2. A few months later, on December 17, NFPHC terminated the contract. Def.'s Stmt. of Mat. Facts [Dckt. # 14-1] ¶ 6.

During the life of the contract, Landmark was not registered with the District of Columbia's Department of Consumer and Regulatory Affairs Corporation Division ("DCRA"), either as a domestic entity organized in the District, or as a foreign entity registered to transact business. *See* Def.'s Stmt. of Mat. Facts [Dckt. # 14-1] ¶ 7; Pl.'s Stmt. of Mat. Facts [Dckt. # 15-1] ¶ 7. On December 16, 2010, the day before NFPHC terminated the contract, Landmark applied for a basic business license with the DCRA. Def.'s Stmt. of Mat. Facts [Dckt. # 14-1] ¶ 11. In March of 2011, the DCRA sent a Deficiency Notice to Landmark. *Id.* ¶ 12. On

November 15, 2011, though, after this case was filed, Landmark received a certificate of registration from the DCRA. Pl.'s Suppl., [Dckt. #16-1] at 4.

Landmark has filed this action alleging that NFPHC violated the contract by failing to pay $250,273.08 in outstanding invoices. Compl. ¶ 8. NFPHC has filed a counterclaim, contending that Landmark did not properly fulfill its contractual obligations, including failing to: provide an SNF manager; consult with NFPHC clinical staff about quality of care, regulatory compliance, and the effectiveness of the SNF's clinical function; ensure that the SNF participated in NFPHC's regulatory compliance programs; assist NFPHC with all aspects of the SNF's financial establishment; provide monthly reports; and ensure that the SNF was in substantial compliance with the Department of Health and Human Services' requirements for skilled nursing facility services providers. Def.'s Ans. and Counterclaim ¶ 5. NFPHC has filed a motion to dismiss, or in the alternative, for summary judgment, and Landmark has filed a cross-motion for summary judgment. The court now turns to the parties' arguments and the applicable legal standards.

### III.  ANALYSIS

#### A.  Legal Standards

#### 1.  Legal Standard for a Rule 12(b)(1) Motion to Dismiss

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Accordingly, a federal court should first determine whether it has jurisdiction over a case before ruling on the merits. *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317-18 (D.C. Cir. 2012). Landmark bears the burden of establishing the court's subject matter jurisdiction by a

preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because subject matter jurisdiction focuses on the court's power to hear the claim, the court must give Landmark's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

## 2. Legal Standard for a Rule 56 Motion for Summary Judgment

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if sufficient evidence exists such that a reasonable jury could return a verdict for the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party bears the initial responsibility of identifying those portions of the record which demonstrate the absence of any

genuine issue of material fact. *Id.* at 323; FED. R. CIV. P. 56(c)(1)(A) (noting that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials").  In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine issue that is suitable for trial.  *Celotex*, 477 U.S. at 324.  On a motion for summary judgment, the court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-moving party, *Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B.  NFPHC's Motion to Dismiss, or in the Alternative, For Summary Judgment

#### 1.  Registration with the DCRA

NFPHC contends that because the District's "door closing" statute prohibits a foreign corporation from maintaining any action in the District unless it has obtained a certificate of registration from the DCRA, Landmark's failure to register to do business in the District prevents it from maintaining this action.  Def.'s Mot. at 1, 3.  More specifically, NFPHC asserts that Landmark's failure to obtain this certificate is a jurisdictional bar to bringing suit.  *Id.* at 6. Landmark responds that since filing this action, it has registered with the DCRA, and that it can therefore maintain this action.  Pl.'s Opp'n at 3-4.  Landmark further contends that the purpose of the statute is not to absolutely deprive a corporation of access to the courts, but instead, to only force it to pay whatever financial obligations it owes to the District.  *Id.* at 4.

The statutory section that NFPHC cites, D.C. Code § 29A-101.119, has been repealed and replaced by D.C. Code § 29-105.02.  *See* D.C. CODE § 29A-101.119, *repealed by* D.C.

Legis. 18-378 § 3(s) (2010); D.C. CODE § 29A-105.02.  Under D.C. Code § 29-105.02, the District's door closing statute, a foreign entity doing business in the District may not maintain an action in the District unless it obtains a certificate of registration.  D.C. CODE § 29-105.02.  Here, Landmark did not have a certificate of registration during the life of the contract, nor when it filed this action on March 1, 2011.  *See* Def.'s Stmt. of Mat. Facts [Dckt. # 14-1] ¶ 11; Pl.'s Stmt. of Mat. Facts [Dckt. # 15-1] ¶ 7.  It only became registered on November 15, 2011.  *See* Pl.'s Suppl., [Dckt. #16-1] at 4.  This Circuit held in *Telephone & Data Systems, Inc. v. FCC* that a federal court sitting in diversity, such as this one, "must apply the District's door closing statute." *Tel. & Data Sys., Inc. v. Am. Cellular Network Corp.*, 966 F.2d 696, 699 (D.C. Cir. 1992).  The Circuit further noted that if a party does "business in the District without a certificate, then the failure to comply with the District's door closing statute [prevents] the exercise of diversity jurisdiction . . . ." *Id.*  This indicates that because Landmark was not registered when it filed suit, the Court lacks diversity jurisdiction to hear its claim.

   Landmark contends that because it registered with the District in the midst of litigation, it cured this defect, such that it can now maintain this action.  Pl.'s Opp'n at 3-4.  Landmark cites *York & York Construction Company v. Alexander*, where the D.C. Court of Appeals stated that the failure to obtain a certificate is not "absolutely prohibitive," but instead "merely suspend[s] the power to continue with the suit until the corporation complie[s] with the laws of the District." *York & York Const. Co. v. Alexander*, 296 A.2d 710, 714 (D.C. 1972) (citing *Hill-Lanham, Inc. v. Lightview Dev. Corp.*, 163 F. Supp. 475 (D.D.C. 1957)).  The court also noted that a party can maintain an action after obtaining a certificate, as "non-compliance is a mere temporary disability and, therefore, capable of obviation at any [stage] of the proceedings." *York*, 296 A.2d at 714 (quoting *Hill-Lanham*, 163 F. Supp. at 475).  Further, the court indicated that a statute like

this is not intended to "deprive a[n unregistered] corporation of access to the courts, but only to force the corporations to pay whatever fees, taxes, or other financial obligations are owing to the body politic." *York*, 296 A.2d at 713; *see also Fed. Loose Leaf Corp. v. Woodhouse Stationary Co.*, 163 F. Supp. 482, 483 (D.D.C. 1958) (finding that the purpose of a statute like this is not to provide "a weapon of substantial defense" for the opposing party, but rather to bring foreign entities under the control of state officials).

Yet while the D.C. Court of Appeals has indicated that a plaintiff needs to be registered to have the capacity to sue, as mentioned above, the D.C. Circuit went one step further in *Telephone & Data Systems* by stating that when federal courts sit in diversity, the statutory requirement to be registered functions as a jurisdictional bar. *Tel. & Data Sys., Inc.*, 966 F.2d at 699; *see also Hunter Innovations Co. v. Travelers Indem. Co. of Conn.*, 605 F. Supp. 2d 170, 172 (D.D.C. 2009). In other words, Landmark's failure to register is not merely a matter of Landmark's capacity to sue, but instead, determines whether this Court has subject matter jurisdiction to hear its claims.

"It has long been the case" that subject matter jurisdiction "depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 571 (2004) (internal citation omitted). Stated otherwise, subject matter jurisdiction is tested at the time the complaint is filed. *Delfani v. United States Capitol Guide Bd.*, 2005 WL 736644, at *2 (D.D.C. 2005), *aff'd* 198 Fed. App'x 9 (D.C. Cir. 2006). Further, if subject matter jurisdiction does not exist at the outset of the litigation, it cannot automatically be created by factual events that occur after the complaint is filed. *See*, *e.g.*, *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008) (stating that "later events may not create jurisdiction where none existed at the time of filing") (internal quotation marks and citations

omitted). Landmark was not registered with the DCRA when it filed the complaint, and thus the Court did not have diversity jurisdiction then. Landmark registering later could not automatically cure the jurisdictional defect to subsequently confer subject matter jurisdiction upon the Court.

Instead, Landmark would have to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d) that properly alleges this Court's jurisdiction, in order to cure the jurisdictional defect. *Prasco*, 537 F.3d at 1337 ("Supplemental pleadings can be used to cure subject matter jurisdiction deficiencies."). This is because under Federal Rule of Civil Procedure 15(d), the Court is "authorized . . . to permit a party to serve a supplemental pleading setting forth events which have happened since the date of the original complaint." *Fund for Animals v. Hall*, 246 F.R.D. 53, 54 (D.D.C. 2007) (citing FED. R. CIV. P. 15(d)); *Hall*, 246 F.R.D. at 385 ("the court has broad discretion in determining whether to allow supplemental pleadings in the interests of judicial economy and convenience").[1] Thus, Landmark shall have thirty days to file the supplemental complaint. *See United States v. Hicks*, 283 F.3d 380, 385-86 (D.C. Cir. 2002) (reasoning that the court can order supplemental pleadings that outline events that have

---

[1] Landmark asserts that under Federal Rules of Civil Procedure 9 and 12, respectively, a defendant must raise a lack of capacity argument in the responsive pleading, or else the defense is waived. Pl.'s Opp'n at 8-9. Landmark contends that because NFPHC argues in its motion to dismiss that Landmark cannot maintain this action for failure to comply with the door-closing statute—instead of raising it in its answer to the complaint—that this argument is waived. *Id.* Under Rule 9(a)(2), a party must allege by specific denial that the opposing party lacks the capacity to sue or to be sued. FED. R. CIV. P. 9(a)(2). Under Rule 12(b), every defense to a claim for relief in a pleading must be asserted in the responsive pleading if such pleading is required, but a party may assert by motion a defense of a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b). As set forth above, this Circuit has held that when federal courts sit in diversity, the statutory requirement to be registered is a jurisdictional bar. *Tel. & Data Sys., Inc.*, 966 F.2d at 699. Thus, because NFPHC's argument here is ultimately that of a lack of subject matter jurisdiction, its having raised this contention in its motion to dismiss is appropriate. NFPHC's argument is therefore not waived. *See* CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1393 (2013), *available at* Westlaw FPP ("a question of subject matter jurisdiction may be presented by any interested party at any time throughout the course of the lawsuit, either by motion or in the answer"). In any event, Landmark's contention that NFPHC did not timely raise the defense is unnecessary, because filing a supplemental complaint will render NFPHC's defense moot anyway.

transpired since the date of the party's most recent pleading); CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1350 (2013), *available at* Westlaw FPP (stating that when there is evidence indicating that the nonmoving party can amend to allege jurisdiction, the district court may deny the motion to dismiss and direct the plaintiff to amend the complaint, or may dismiss with leave to amend within a prescribed period of time).[2]

### 2. Landmark's Trade Name

In addition, NFPHC contends that because Landmark has failed to register "Landmark Health Solutions" as a trade name with the DCRA, it cannot maintain an action in this Court. Def.'s Mot. at 6, n.4. Under D.C. Code § 47-2855.02(a)(3), "[a] person who carries on, conducts, or transacts business in the District of Columbia under any trade name shall register that trade name with the Department[, where a] foreign or domestic limited liability company shall register by setting forth the limited liability company name as filed with the Mayor." D.C. CODE § 47-2855.02(a)(3). This indicates that a foreign LLC, like Landmark, which transacts business in the District under a trade name must register with the DCRA the same LLC name that it filed with the Mayor's office. Further, under D.C. Code § 47-2855.03(d), "[n]o person carrying on, conducting, or transacting business under any trade name shall be entitled to maintain any suit in any of the courts of the District of Columbia until the person has properly completed the registration as provided for in this section." D.C. CODE § 47-2855.03(d).

Neither party has provided sufficient documentation for the Court to determine the name that Landmark filed with the Mayor, and if that name was also registered with the DCRA. The parties must therefore provide supplemental briefing to enable the Court to determine this issue.

---

[2] NFPHC also argues that failing to register with the DCRA precludes Landmark from having standing to sue, pursuant to the door closing statute. Def.'s Reply at 4-5. As noted above, Landmark is now registered. NFPHC's argument is thus moot, because when Landmark files the supplemental complaint, it will have standing to bring suit.

9

Landmark should bear in mind that if it has not registered with the DCRA the same name that it filed with the Mayor—if it fulfills this registration requirement before refiling the complaint—that it will cure this deficiency. The parties will thus submit supplemental briefing addressing this issue (including documentation confirming the name that Landmark filed with the Mayor) within thirty days. *See Hunter*, 605 F. Supp. 2d at 174 n.6.

### 3.  Obtaining a General Business License

NFPHC also contends that under D.C. Code § 47-2851.02, because Landmark does not possess a "basic business" license to do business in the District, it may not recover on the contract. Def.'s Mot. at 7-9. Landmark responds that the authority that NFPHC cites requiring a basic business license to recover on a contract does not apply to Landmark. Pl's Opp'n at 5. Under D.C. Code § 47-2851.03(d), a General Business License is required "for all businesses engaging in any business transaction in the District that have a business tax identification number and who are not otherwise required to obtain an endorsement under a license endorsement category." D.C. CODE § 47-2851.03(d). Further, under D.C. Code § 47-2851.02, if an entity is "required under law to obtain a license" to do business in the District, that entity "shall not engage in such business in the District" without having obtained a license. D.C. CODE § 47-2851.02. It appears that Landmark would be required to obtain a license under these provisions. The parties have not offered sufficient information, though, for the Court to determine whether Landmark has obtained this business license. The parties should therefore provide supplemental briefing for the Court to resolve this issue, within thirty days.

### 4.  Breach of Contract

Finally, NFPHC cites its contract with Landmark, which states that Landmark shall comply with all federal, state, and local statutes, codes, regulations and guidelines. Def.'s Mot.

at 10.  NFPHC claims that because Landmark did not comply with the District's requirement to be registered and to obtain a license, it breached the contract.  *Id.*  NFPHC contends that because of this alleged material breach, it should be excused from performing on the contract, and that it should also be granted partial summary judgment on its counterclaim.  *Id.* at 10-11.

A "material breach" is a failure to do something that is so fundamental to a contract, that not performing that obligation defeats the essential purpose of the contract, or makes it impossible for the other party to perform under the contract.  *See 3511 13th St. Tenants' Ass'n v. 3511 13th St., N.W. Residences, LLC*, 922 A.2d 439, 445 (D.C. 2007) ("For a breach to be material, it must be so serious [as] to destroy the essential object of the agreement.") (internal citation omitted); WILLISTON ON CONTRACTS § 63:3 *available at* Westlaw WILLSTN-CN.  In other words, for a breach to be material, it must "go to the root" or "essence" of the agreement between the parties.  WILLISTON ON CONTRACTS § 63:3.

In this case, the parties entered into the contract for the purpose of providing management consulting and staffing services to NFPHC's SNF, or a nursing facility.  Def.'s Stmt. of Mat. Facts [Dckt. # 14-1] ¶¶ 2-3.  The parties' dispute is over whether such services were sufficiently rendered, and whether Landmark was appropriately compensated.  *See generally* Compl. *and* Answer & Counterclaim.  Landmark's initial failure to register with the DCRA does not go to the essence of the parties' agreement, nor does a failure to register defeat the essential purpose of the contract, which is to provide consulting and staffing services.  Indeed, NFPHC claims that it terminated the contract because Landmark failed to offer proper services—such as providing an SNF manager, consulting with NFPHC, and generating monthly summary reports—not because Landmark did not register with the District.  Answer & Counterclaim ¶¶ 5-6.  NFPHC does not offer any arguments or evidence that indicate that Landmark's failure to register deprived

11

NFPHC of the benefit that it reasonably expected when entering into the contract. *See Campbell v. Fort Lincoln New Town Corp., Inc.*, 55 A.3d 379, 386 (D.C. 2012) (reasoning that because the appellees' failure to disclose certain information did not deprive the appellants of the benefits of entering into the contract, the non-disclosure was not a material breach); RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981) (noting that "in determining whether a failure to offer performance is material[,]" one of the significant factors that a court considers is "the extent to which the injured party will be deprived of the benefit [that] he reasonably expected"). NFPHC has thus failed to demonstrate that, as a matter of law, Landmark not being registered constitutes a material breach of the contract, and partial summary judgment on the counterclaim is therefore denied.

In addition, a party is not automatically excused from the future performance of contract obligations every time the other party commits a breach. WILLISTON ON CONTRACTS § 63:3 ("if a breach is relatively minor and not of the essence, the [other party] is still bound by the contract and may not abandon performance"). Rather, if the breach has not contributed materially to the contract being terminated, it does not excuse performance. *See Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 737 n.19 (D.C. 2000) (noting that because the appellees' breach of a contract clause did not contribute materially to the contract falling through, the breach did not excuse performance). Here, NFPHC has not indicated how Landmark's failure to register contributed to its terminating the contract for Landmark not providing proper management and consulting services. NFPHC's claim that it is excused from performing on the contract is thus incorrect.

### C. Landmark's Cross-Motion for Summary Judgment

### 1. Landmark's Challenge to the Sufficiency of NFPHC's Expert Testimony

In its cross-motion for summary judgment, Landmark contends that three of the witnesses that NFPHC has indicated will testify at trial lack the sufficient qualifications and foundation required for their opinions for their expert testimony to be admissible. Pl.'s Mot. at 15. NFPHC responds that a motion for summary judgment is not the proper vehicle to challenge the admissibility of expert testimony, and that the preferred vehicle is instead a motion *in limine*. Def.'s Opp'n at 4.

Under Federal Rule of Evidence 702, expert testimony is admissible at trial if it is based upon sufficient facts or data, is the product of reliable principles and methods, and if the witness has applied such principles and methods reliably to the facts of the case. FED. R. EVID. 702. Rule 702 requires trial judges to act as "gatekeepers" to ensure that the methodology underlying the expert testimony is valid and the expert's conclusion is based on "good grounds." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993); *see also Meister v. Medical Eng'g Corp.*, 267 F.3d 1123, 1127 (D.C. Cir. 2001).

Trial courts are afforded "substantial latitude in deciding" the procedure necessary to test the sufficiency of a potential expert, and the Court prefers to evaluate this argument in a motion *in limine* and at a *Daubert* hearing, instead of while resolving a motion for summary judgment. *Sloan v. Urban Title Serv., Inc.*, 770 F. Supp. 2d 227, 237-38; *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 13 (D.D.C. 2011); *see also Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 2009 WL 105501, at *2 (M.D.P.A. Jan. 16, 2009) (determining that arguing for the exclusion of expert testimony at the summary judgment stage is premature). In addition, even if the Court were to evaluate the merits of Landmark's arguments at this stage,

without knowing what the fourth expert witness will testify to, the Court cannot dismiss the claim for lack of supporting expert testimony. Thus, Landmark's arguments challenging NFPHCs' expert witnesses will not be considered at this juncture, but can be raised via a *Daubert* motion followed by the *Daubert* hearing, to be scheduled shortly thereafter.

### 2.  The Contract's Indemnification Clause

Landmark also asserts that the parties' contract contains an indemnification clause that holds Landmark harmless with respect to any loss or damage that NFPHC suffered in relation to Landmark's performance of its services, and that indemnifies Landmark for any loss, liability or damage that it suffered. Pl.'s Mot. at 24. Landmark contends that this clause therefore bars any of NFPHC's potential recovery on its counterclaim. *Id.* In response, NFPHC argues that the indemnification clause only applies to property damage and personal injury or death, not to breach of contract money damages. Def.'s Opp'n at 19. NFPHC further asserts that the clause is also intended to protect Landmark against claims made by third parties outside of the contract, not claims made by the parties, themselves. *Id.* at 20.

The D.C. Court of Appeals has held that "[w]hen interpreting a contract, the document must be "examine[d] . . . on its face, giving the language used its plain meaning. *Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009) (internal citation omitted). Indeed, "[t]he meaning of words . . . commonly depends on their context." RESTATEMENT (SECOND) OF CONTR. § 202 cmt. b (1981). Here, the indemnification clause in the parties' agreement states:

> Client shall hold harmless and indemnify Landmark, its directors, officers, employees, agents and representatives, and Consultant from and against all loss, liability, penalty, damage, expense, and cost, including attorneys' fees, of any kind, to person and property relating in any way to the performance of

> Consultant's services under this Agreement, whether or not suit is brought. Client assumes all risk of property loss or damage and of personal injury or death which its officers, directors, employees, agents and representatives may sustain in connection with this Agreement.

Pl.'s Mot., Ex. 1, at 2-3. The clause appears to "hold" Landmark "harmless" for any loss, liability, or damage to "person or property," if such loss relates to NFPHC's performance of services. *Id.* A plain reading of the clause indicates that it does indeed hold Landmark harmless for only NFPHC's property loss, personal injury, or death, and nothing further. *See id.* This is further evidenced by the subsequent sentence that states that NFPHC assumes the risk for any "property loss or damage" or "personal injury or death" that it experiences. *Id.* Because NFPHC's counterclaims relate to damages for Landmark's alleged breach of the contract, and not to any property damage or personal injury, they do not fall under the purview of this clause and thus do not shield Landmark from liability for such claims. *See Holland v. Hannan*, 456 A.2d 807, 816-17 (D.C. 1983) (interpreting contract terms by deciphering their "unambiguous, plain meaning and usage . . in the context of [the] general purposes and intent of [the p]aragraph" in which they were contained).

In addition, NFPHC is correct in asserting that a contract clause that states that it "indemnif[ies]" a party means that it protects that party from liability when third parties outside of the contract bring suit. *See* 42 C.J.S. *Indemnity* § 1 (2013) ("An indemnity provision generally does not apply to claims between the parties to the agreement, but obligates the indemnitor to protect the indemnitee against claims brought by third parties."); *Arnold Oil Props., LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202, 1206-07 (10th Cir. 2012) ("While the terms indemnity and exculpatory are often used interchangeably, they are, in fact, different. An exculpatory clause releases in advance the second party for any harm the second party might cause the first party after the contract is entered[, while an] indemnification clause . . . protects

against claims made by parties outside the contract.") (internal quotation marks and citations omitted). In this context, the term "indemnif[ies]" appears to shield Landmark from liability if a third party brings a claim alleging property damage, personal injury, or death against Landmark, not if NFPHC asserts a breach of contract claim. Accordingly, because the indemnification clause in the contract does not shield Landmark from liability for breach of contract claims, Landmark's cross-motion for summary judgment is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Landmark leave to file a supplemental complaint to cure the jurisdictional defect within thirty days. In addition, the parties shall file within thirty days supplemental briefing regarding whether Landmark's trade name has been registered, and also whether it has obtained the requisite business license to do business in the District. Finally, the Court denies Landmark's cross-motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 18th day of June, 2013.

RUDOLPH CONTRERAS
United States District Judge